November 14, 1904.

————o————

No. 3517.

(Court of Appeal, Parish of Orleans.)

## JAMES PREVOST, Agent, vs. FITZPATRICK & BRENNAN.

Questions of fact only are involved herein.

Appeal from Civil District Court, Division "A."

W. S. Benedict, for Plaintiff and Appellant.

H. M. Ansley, for Defendant and Appellee.

MOORE, J. This is a suit for accounting between the Auctioneers and the person employing them to make the sale.

It appears that the plaintiff, who is the representative of certain insurance companies, employed the defendant firm of auctioneers to sell for his account as such agent or representative, a large lot of rope which had been placed in his possession as the result of an adjustment or settlement of an insurance policy covering that property. It was stipulated that the auctioneers should receive for their services one and one-half per cent on the sale of the rope and should likewise, as is customary, retain from the gross proceeds of the sale all necessary costs of advertisement, hospital fees and such other and usual expenses.

After one advertisement the rope was offered at public sale by the defendants and two lots were knocked down, one lot to Woodward, Wight & Co., realizing $112.44 and another lot to

13

Mente & Co., bringing $210.81, or say a total for both sales of $324.25.

Thereupon the agent of the underwriters, the plaintiff herein, conceived the idea that the bidders at the sale had combined to depress the price of the rope and to bid it in cheap and below its real value, directed the auctioneers to stop the sale and not to offer any further lots; advising him at the same time that he, as the representative of the underwriters, would take the remainder of the unsold rope at the inventoried price as it appeared on the underwriter's list of appraisement.

Public announcement that no more rope would be sold at public auction was then made to the bystanders and the further sale at auction then ceased.

Subsequently a controversy arose between the plaintiff and the defendants as to the latter's right to claim their commission on the whole lot, the latter contending that to the $324.25 gross proceeds of the sale at public auction should be added the inventoried value of the balance of the rope and that upon the sum total of these two items their commission of 1 1/2 per cent should be based. Plaintiff demurred to this and suggested that if this basis of settlement was insisted on, defendants might lose future sales for account of underwriters. Defendants, however, insisted on their claim to be thus paid and as a result of the discussion it was agreed that if the defendant would assist the plaintiff in selling the remaining rope at private sale then the commissions as claimed would be allowed. Defendant promised to do so and did do so, and the evidence satisfies us that it was through and by their instrumentality that the entire remaining lot of rope was disposed of at private sale. The gross total of all such sales is $12,000, the commission on which would be $180.00. It is objected, however, by the plaintiff that the representation made to the auctioneers that the plaintiff would take the balance of the rope at inventoried price, and the subsequent

assurance that the 1 1/2 per cent would be paid on the gross total of the sales if the defendants would assist in selling it at private sale, was made by one without authority.

We think the authority of the person who so advised the auctioneers, an employee of the plaintiff, has been fully established. It was he who made the initial arrangement with the defendants; he who employed them and arranged the terms with them, and it was he who gave the order to stop the sale, at the same time saying that the plaintiff would take the rope for his own account at inventoried price. Indeed it was with this same person alone that all the transactions were had from beginning to end. His authority to do all else save as to the last understanding is not disputed. He was acting throughout the whole matter with his principal's knowledge and it is now too late to question his authority in a matter, which is a mere incident to that which was legitimately within the scope of his employment. At any rate, his authority to call the public auction off and to say that the underwriter would take the rope at the inventoried price is not questioned and this alone entitles the auctioneers to their commission. This was an adjudication to the plaintiff as fully as if the purchase had been made by a third person.

The hospital tax of $6.00, we understand, is not disputed. This must, therefore, be allowed the auctioneers.

It is shown that the actual cost of the advertisement is $12.cc and this amount must be allowed the defendants.

The defendants claim an allowance of $17.50 for labor and bookkeeper for 10 days. It is not shown that this is a usual charge by auctioneers; and indeed we cannot understand why the employer should have to pay the auctioneer for keeping his books of sales and accounts. Certainly, for the commission which the auctioneer receives for selling the goods the employer at least may expect that he is not to pay the auctioneer's clerks and employees as well. This item cannot be allowed.

The defendants received from the sale in cash........ $323.25
They are entitled to commissions as above
    stated ........  ........  ................ $180.00
To hospital tax ...........................  6.00
To advertisement .........................  12.00
    A total of .................................  198.00

        Balance due plaintiff ..................... $125.25

Plaintiff is therefore entitled to recover of the defendants this balance of $125.25. The lower Judge determined the balance to be $107.75. This results from his allowing the item $71.50 above stated, which we think is error. The judgment will therefore be amended accordingly.

It is therefore ordered, adjudged and decreed that the judgment appealed from be, and the same is hereby, amended by increasing same from One Hundred and seven 75/100 Dollars to One Hundred and twenty-five 25/100 Dollars, and as thus amended, the judgment is affirmed. Appellee to pay the costs of appeal.